### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ALEJANDRO CORTEZ, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 19 CV 01512 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| BRAVO RESTAURANT GROUP, INC., an Illinois corporation, JOHN C. BOZONELOS, JOHN G. BOZONELOS, JAMES PAPPAS, DEMETRIOS PETSAS, AND GEORGE ROGIOKOS, in their individual capacities, | ) ) ) ) ) ) ) ) ) | |
| Defendant. | | |

### MEMORANDUM OPINION AND ORDER

This is a dispute over wages. Plaintiff Alejandro Cortez brings suit against numerous defendants—Bravo Restaurant Group, Inc., John C. Bozonelos, John G. Bozonelo, James Pappas, Demetrios Petsas, and George Rogiokos—associated with his former employer, Basil's Greek Dining. Cortez alleges that his compensation—or lack thereof—by defendants violated the Fair Labor Standards Act and breached a contract entitling him to performance-based pay. Cortez also seeks a declaratory judgment finding that another portion of that contract—the non-compete clause—is unenforceable. A subset of the defendants (hereafter "Bravo") have moved to dismiss Cortez's request for declaratory judgment and his breach of contract claim under Rule 12(b)(1).[1] Because the Court finds that it lacks jurisdiction over the request for declaratory judgment but

---

[1] Defendants John G. Bozonelos (who is deceased) and Demetrios Petsas are not parties to the motion because, the defense briefs submit, they were not properly served with the complaint. There has been no motion practice directed to the status of these defendants in this case.

possesses jurisdiction over the breach of contract claim, Bravo's motion is granted in part and denied in part.

## BACKGROUND[2]

From 2009 until his employment was terminated in January 2019, Alejandro Cortez worked as a cook at Basil's Greek Dining—a restaurant owned and operated by defendants. Compl. ¶ 3, ECF No. 1. Much of this dispute stems from the hours that Cortez worked and how he was compensated during that time. Specifically, during one or more workweeks over the last three years of his employment, Cortez "worked at least 59 hours per week" over six days, with "every other Sunday off." *Id.* ¶ 4. Other weeks—when, for example, the restaurant had its anniversary week or the restaurant's other cook was not at work—Cortez "worked as many as 84 hours per week." *Id.* ¶ 5. At times, defendants gave Cortez less than a 20-minute meal period. *Id.* ¶ 31. During the entire 10-year period that Cortez worked for Bravo, he was classified as exempt from the overtime pay requirements of the Fair Labor Standards Act and the Illinois Minimum Wage Law; and defendants did not pay Cortez overtime pay at a rate of one and one-half times his regular rate of pay. *Id.* ¶¶ 26, 34. Instead, defendants paid Cortez $1,100 every two weeks by check on Saturday, $900 every two weeks by check on Saturday, and $400 once per month by check on or about the middle of the month.[3] *Id.* ¶ 6.

---

[2] As with all motions to dismiss, the Court must accept all well-pleaded facts in the complaint as true and draw all permissible inferences in favor of the plaintiffs. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

[3] Neither the complaint nor the briefs explain why Cortez received multiple checks or whether the Saturday checks were received on the same Saturday or alternating Saturdays.

Also relevant is an agreement—the Bravo Restaurant Group, Inc. Incentive Compensation Agreement" (the "Agreement")—that Cortez signed near the beginning of his tenure with the restaurant as a condition of continued employment. *Id.* ¶ 36. As suggested by its title, part of the Agreement provided for performance-based pay: if Cortez kept food costs below 65% of total sales for a given month, he would receive the greater of $300 or five percent of the restaurant's pre-tax profit. *Id.* ¶ 37. The Agreement also specified other terms of employment. As relevant here, it included a covenant not to compete, solicit customers, or knowingly make comments likely to result in adverse media for the restaurant for two years after the termination of employment (the "Covenant"). *Id.*

Cortez filed his complaint on March 1, 2019 alleging violations of the Fair Labor Standards Act, the Illinois Minimum Wage Law, and breach of the Agreement. Cortez also sought a declaratory judgment that the Covenant was invalid as a matter of law. Subsequently, Bravo moved to dismiss Cortez's claim for breach of the Agreement and his request for declaratory relief regarding the Covenant.

## DISCUSSION

In assessing a motion to dismiss under Rule 12(b)(1),[4] the Court "accept[s] as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor unless [jurisdiction] is challenged as a factual matter." *Remijas v. Neiman Marcus Group,*

---

[4] Although Bravo also moved to dismiss under Rule 12(b)(6), both the arguments it presents are jurisdictional. *See Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (holding that ripeness, when it implicates the possibility of a court issuing an advisory opinion, "is a question of subject matter jurisdiction under the case-or-controversy requirement" (quoting *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008))) (internal quotation marks omitted).

*LLC*, 794 F.3d 688, 691 (7th Cir. 2015). Nonetheless, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

Bravo contends that Cortez's request for declaratory relief does not present a justiciable case or controversy. "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). The Declaratory Judgment Act permits the Court to issue declaratory judgments where "there is an actual controversy between two parties." *NewPage Wis. Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. and Serv. Workers Int'l Union, AFL–CIO/CLC*, 651 F.3d 775, 776 (7th Cir. 2011) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)); *see also* 28 U.S.C. § 2201.[5] "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune*, 549 U.S. at 127, citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). "The requirements of the Act and those of Article III are therefore coextensive." *Amling*, 943 F.3d at 377.

One component of the "case or controversy" requirement is ripeness. *Id.* The Supreme Court has summarized the ripeness inquiry as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc*, 549 U.S. at 127 (quoting *Maryland*

---

[5] Although Bravo cites Illinois law in making its argument, "[w]hether a dispute has reached the stage at which a declaratory judgment under 28 U.S.C. § 2201 is appropriate is a question of federal practice." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

*Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Although a party need not "bet the farm" or "risk treble damages" prior to seeking declaratory judgment, the legal rights at issue must, at the very least, be "actively contested." *Id.* at 134. Where rights are not actively contested— where there has been no indication that enforcement will follow infraction—there is no case to resolve. *See Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir.1992) ("Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts."); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) ("The declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative.").

Cortez's complaint does not plead facts establishing an immediate and real controversy within the Court's jurisdiction. As Bravo highlights in its motion to dismiss, Cortez's complaint is "completely devoid of any reference that [Bravo] [is] enforcing the Agreement, or seeking or threatening to enforce the Agreement"—a deficiency that Bravo attributes to the fact that it is "*not enforcing the Agreement.*" Mot. Dismiss 5, ECF No. 16. Cortez responds that Bravo may yet reverse course and enforce the Covenant. Cortez is, of course, correct that today's conduct is no guarantee of tomorrow's, but without a sound basis for inferring such a risk, any future dispute remains quintessentially "hypothetical" and "speculative." *See, e.g., Beloteca, Inc. v. Apicore US LLC*, No. 19 CV 00360, 2019 WL 1516943, at *2 (N.D. Ill. Apr. 8, 2019 (finding inadequate basis for inferring a risk of future suit where defendants "had never even heard of [plaintiff] when [plaintiff] filed suit, much less threatened it with anything"); *Deutsche Leasing USA, Inc. v. Hamps Enterprises, LLC*, No. 14 C 6112, 2015 WL 536010, at *3 (N.D. Ill. Feb. 6, 2015) (finding that the "threat of litigation was not real and immediate, but merely speculative" where letters from defendant to plaintiff only "suggest[ed] the possibility of future litigation"). Cortez does not allege

5

that Bravo has in any way threatened to enforce the non-compete provision against him—or against anyone else, for that matter. As a result, the Court grants Bravo's motion to dismiss Cortez's request for declaratory relief.

Bravo also moves to dismiss Cortez's state law claim for breach of contract, arguing that it falls outside of the Court's supplemental jurisdiction This argument also hinges on Article III's "case or controversy" requirement, though here the question is the scope, rather than the existence, of a federal action. Under 28 U.S.C. § 1367(a), where a district court has original jurisdiction over an action, it may exercise supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." "Two claims are part of the same case or controversy if they 'derive from a common nucleus of operative facts.'" *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir.1995)). Although a "loose factual connection between the claims is generally sufficient," *id.*, to be "operative" the common facts "must be relevant to the resolution of the federal claims." *See Sommese v. American Bank & Trust Co.*, No. 11-cv-2827, 2012 WL 3006824, at *7 (N.D. Ill. 2012). As a result, sharing a factual backdrop—such as the fact that Cortez's FLSA claims and his breach of contract claim both arose in the context of his employment with Bravo—is insufficient to support supplemental jurisdiction. *See Geiser v. Goshen Health Sys. Inc.*, No. 3:17-CV-864 JD, 2018 WL 3619796, at *2 (N.D. Ind. July 30, 2018) ("[T]he common fact that an employment relationship existed between the parties, standing alone, is insufficient to support supplemental jurisdiction."); *See also Berg v. BCS Fin. Group*, 372 F.Supp.2d 1080, 1093 (N.D. Ill. 2005).

In the present case, however, the common facts are genuinely operative: resolution of both the FLSA claim and the claim for breach of the Agreement require investigating the compensation

that Cortez received from Bravo. *See Sommese v. Am. Bank & Tr. Co.*, No. 11-CV-2827, 2012 WL 3006824, at \*7 (N.D. Ill. July 23, 2012) ("Whether asserted as an FLSA claim or claims for unpaid wages and bonuses, Plaintiff Leyden's claims are derived from the same common nucleus of operative facts, which flow from AB & T's alleged failure to pay Plaintiff Leyden wages that she is owed."). Examining the steps necessary to resolve the claims demonstrates as much. For example, as part of his FLSA claim, Cortez has alleged that Bravo failed to pay him statutorily required overtime pay. FLSA requires that non-exempt employees be paid an overtime rate of at least one and one-half times the employee's regular wage for any hours worked in excess of forty hours in one week. *See* 29 U.S.C. § 207(a). Determining Cortez's "regular rate," however, would require assessing whether the incentive-based pay described by the Agreement should be included—and, without deciding at this juncture, its inclusion is certainly plausible. *See Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577 (7th Cir. 1995) ("[U]nder § 7(e)(3)(a) the bonus must be included in the 'regular rate' unless it is entirely discretionary with the employer."); *see also Kruger v. Arrow Container, LLC*, No. 1:19-CV-1402-JRS-MJD, 2019 WL 6468334, at \*1 (S.D. Ind. Dec. 2, 2019) ("Bonuses that must be incorporated into an employee's regular rate for overtime purposes are bonuses that are promised to employees upon hiring, bonuses given to induce more efficient work, and bonuses awarded for attendance, production, or quality of work."). Further, if included, any incentive-based pay that Cortez was entitled to receive under the Agreement would directly impact Cortez's recovery under his FLSA claim for overtime pay and his breach of contract claim. This suffices to find a common nucleus of operative facts.

Bravo's arguments to the contrary are unavailing. First, Bravo points to elements of Cortez's FLSA claim that may not share operative facts with the breach of contract claim—for example, the question Cortez's eligibility for exempt status under FLSA—but complete

7

congruence of relevant facts is not required. Second, Bravo cites to a string of cases, all of which

are distinguishable. For example, Bravo points to *Sommese*, cited above, for the proposition that

"whether one defendant breached the terms of the contract is unrelated to whether other defendant

failed to pay overtime wages under the FLSA." *See* Reply Br. 3, ECF No. 25. But in that case,

there were not only multiple defendants but, more importantly, multiple plaintiffs: "whether

Defendant Klaus breached the terms of the contracts of Sommese and Gennarelli is unrelated to

whether AB & T failed to pay Leyden's overtime wages under the FLSA." *Sommese*, No. 11-CV-

2827, 2012 WL 3006824, at *8 (N.D. Ill. July 23, 2012). As here, the court in *Sommese* found that

Leyden's state law claims for compensation ***were*** sufficiently related to her FLSA claim to find

supplemental jurisdiction. *Id.* at *7. Bravo also cites to *Lyon v. Whisman*, a case in which the Third

Circuit found that original jurisdiction over a FLSA claim did not extend supplemental jurisdiction

over state law breach of contract and tort claims. 45 F.3d 758, 763 (3d Cir. 1995). Though the

contract claim related to an unpaid bonus, the Third Circuit found that "[t]he only link between

Lyon's FLSA and state law claims is the general employer-employee relationship between the

parties." *Lyon v. Whisman*, 45 F.3d 758, 762 (3d Cir. 1995). The Court has no quarrel with the

reasoning that followed from this finding—that, without more, an employer-employee relationship

is an insufficient link—but distinguishes the present case on the facts: as noted above, there is

additional, operative evidentiary overlap in this instance. Requiring more would undermine the

notion that a "loose factual connection between the claims is generally sufficient." *Baer* v, 72 F.3d

at 1299. The Court finds that Cortez's FLSA claim and his breach of contract claim are sufficiently

related to form part of the same case or controversy; therefore, the Court has, and chooses to

exercise, jurisdiction over the breach of contract claim. Bravo's motion to dismiss the claim is

denied.

8

\*　　\*　　\*

For the reasons stated above, the defendants' motion to dismiss under Rule 12(b)(1) is granted in part and denied in part.

Date: May 20, 2020

John J. Tharp, Jr.
United States District Judge